[No. 22063. Department Two. December 2, 1929.]

*In the Matter of the Guardianship of* MARJORIE GENEVIEVE BRENNER.[1]

*J. E. Stone,* for appellants.

*J. N. Pearcy* and *Imus & Imus,* for respondents.

[1]Reported in 282 Pac. 486.

MAIN, J.—This is an appeal from an order of the superior court dismissing the petition of V. A. Anderson and Betty Anderson, his wife, by which they sought to be appointed guardians of the person of Marjorie Genevieve Brenner, a minor, approximately three years of age.

The facts are these: In the summer of 1926, and for some time prior thereto, Carl Brenner and Mary Brenner, his wife, were residing with Mr. Brenner's father and mother and their family on a small farm near the town of Stella in Cowlitz county. At this time, Mr. and Mrs. Brenner had two children, one a boy about three years of age, and Marjorie, then about eight months old. Mrs. Brenner, as appears from her testimony, was doing the major portion of the work for the two families, and was not well treated by her mother-in-law. Her health became impaired, and she went to California and stayed for a time with relatives. While she was gone, the children were taken care of by Mrs. Brenner's mother and sister and brother-in-law. After being in California for a short time, she returned and again went to live with her husband in the home of his parents, but stayed but a short time and again left for California. Before going this time, it was understood that her husband would take care of the boy and Marjorie was given into the custody of Mr. and Mrs. Anderson, the appellants, Mrs. Anderson being the sister of Mr. Brenner. On this trip, Mrs. Brenner remained in California about three months, when she returned and then went to Portland, where she remained until in the month of March, 1927, when she resumed marital relations with her husband. In the meantime, her husband had brought an action for a divorce and an interlocutory decree had been awarded, but this action was dismissed. After they resumed marital relations, they assumed the custody of their small son, and thereafter

another child was born to them. Mr. and Mrs. Brenner wanted the custody of Marjorie and Mr. and Mrs. Anderson did not want to give her up. Talk took place between them from time to time, but nothing definite was done until in November, 1927, the Brenners again assumed the custody of Marjorie. The immediate steps which gave rise to this are not here material. Neither is the detail of the preceding events, dating back to the time that Mr. and Mrs. Brenner were residing with his parents.

▉ No question has been raised in this case as to the form of the proceeding, and we express no opinion upon that question. If this be the proper proceeding, then it follows that no guardian of the person of a child can be appointed in the absence of a showing that the parents of the child are not fit and proper persons to have such custody and that the welfare of the child requires that its custody and control be taken from its parents.

▉ ▪ Since the Brenners have resumed marital relations, they have established themselves in a comfortable house, adequately furnished. Mr. Brenner is earning sufficient to maintain his family in comfort. They are living happily together and the children are being well cared for and properly brought up. It should be said here that, during the time that Marjorie was with Mr. and Mrs. Anderson, they gave her the best of care and attention and that a sincere affection had grown up between them and the child.

Even if the Anderson home be better equipped than that of the Brenners and in material respects the child could be better cared for there, this of itself is not sufficient to deprive the parents of the custody of their child. As above stated, before natural parents can be deprived of the custody of their child, it is necessary

that there be a showing that they are not fit and proper persons to have such custody and that the welfare of the child demands that its custody and control be taken from them. In *Lovell v. House of the Good Shepherd,* 9 Wash. 419, 37 Pac. 660, 43 Am. St. 839, it was said:

"While it is true that the welfare of the child should be the first consideration of the court, yet the right of the parent is not to be disregarded, and it is assuming a grave responsibility to deprive parents of the care, control, custody and education of their children because they do not come up to the standard of perfection that we have established for our own action in that respect. There is, perhaps, scarcely a day but that children may be seen who, in the ordinary estimation, are neglected, and of whom the popular verdict would declare, that they would be better off and stand a better chance of becoming useful members of society if they were removed from the pernicious influence of their parents. Yet it would not do for that reason to interfere with the domestic relations, or to set up our particular standard for the guidance of families in general. There is such a diversity of religious and social opinion and of social standing and of intellectual development and of moral responsibility in society at large, that courts must exercise great charity and forbearance for the opinions, methods and practices of all different classes of society; and a case should be made out which is sufficiently extravagant and singular and wrong to meet the condemnation of all decent and law-abiding people without regard to religious belief or social standing before a parent should be deprived of the comfort or custody of a child."

The excerpt from that case here quoted was quoted with approval in the case of *In re Mead,* 113 Wash. 504, 194 Pac. 807.

In *In re Stanley,* 143 Wash. 440, 255 Pac. 656, 258 Pac. 859, it was said:

"The parent is the natural guardian of the child recognized as such by law, and in the absence of a showing that the welfare of the child has not been

properly looked after this right should not be abridged.''

In *Penney v. Penney,* 151 Wash. 328, 275 Pac. 710, it was said:

''In simple terms, we have here a contest between a father and a stranger to the blood. The father's natural and legal rights were not destroyed by the decree. They were limited, only, in favor of the mother. The mother having abandoned the rights which the decree gave her and apparently her natural rights as well, the father stands in the same position as to strangers as he would if the decree had never been entered.

''Under these conditions, the love and affection which have grown up between the child and those in whose care she has been for ten years, is not a controlling factor. Nor is the fact, if such should be the fact, that the strangers to the blood might be able to give her more pleasant and luxurious surroundings, better educational facilities and like advantages, a factor to be weighed against the father's rights, if he be a fit and proper person to have the custody of his own child.''

We find nothing in the record which has occurred subsequent to the time that Mr. and Mrs. Brenner resumed marital relations which would justify the court in depriving them of the custody of one or more of their children. There has, in fact, been no effort made to remove from them the custody of the children other than Marjorie.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.