[No. 29967. Department Two. November 15, 1946.]

NAOMI STORGAARD, *Respondent,* v. CARL STORGAARD, *Appellant.*[1]

*Wright, Booth & Beresford,* for appellant.

*Sullivan & Pruzan,* for respondent.

MALLERY, J.—The parties were married on the twenty-seventh day of February, 1937. When this action was brought in August, 1945, the plaintiff was thirty-three years of age, and the defendant was twelve years her senior. Two boys, Carl Henry, seven years of age, and Raymond, four years of age, were born of the marriage. The husband, defendant, is a boilermaker and, during the war years, worked about sixteen hours a day. The first four years of their married life they lived in a two-room apartment. He gave her all his pay checks, but, because of her inability to conserve their funds, he undertook the management of them and, by the time of this action, had bought a home at the cash price of $4,050, an automobile valued at eight or nine hundred dollars, and had $5,400 in cash. The plaintiff contends that the defendant is parsimonious.

[1] Reported in 174 P. (2d) 309.

While the parties were living in the apartment, friction arose over the plaintiff's slovenly housekeeping habits, and the home was purchased under the representation that, if she had a house, it would be easier to keep clean.

There was no contention on the part of either party as to any moral wrongdoing on the part of the other. The trial court commented on this fact in its oral decision, stating:

"The case is unusual in many respects; first, that there is no liquor involved, no drunkenness, no taverns and no other man or woman in the case."

Both parties were granted a divorce.

The conditions that the defendant found to be intolerable were that, even after purchasing the new home, he would go to the kitchen and find several weeks' garbage piled around the sink, the odor almost unbearable, and the juice running from the sacks. The entire house reeked of garbage. At times, spoiled food was left on the drainboard for a period of about six months. The refrigerator went undefrosted for two or three months at a time, and leftovers remained in the refrigerator for such periods long after they had spoiled and were covered with mold. The toilet in the bathroom was usually unflushed. The children's beds were made only when the beds were changed, and otherwise the children went to sleep in them in the same condition as they had left them in the morning.

When the children's clothes were purchased, any needed alterations were left undone by the wife. If their pants were too long, they were simply rolled up, which, of course, resulted in the trousers being worn out immediately, due to the fact that they would unroll and the children's shoes would be within the trousers. No repairs of any kind or nature were made to their clothes, and so great was their neglect that the older boy repeatedly went to school holding his pants up with his hands.

The plaintiff went out visiting during the day, and the children were allowed to run around the neighborhood uncared for. If the children had lunch at all, they got it at two-thirty or three o'clock in the afternoon and then would be unable to eat their supper. The smaller child was fre-

quently seen playing in the street stark naked even in the wintertime.

The children were put to bed regardless of how dirty they were. If they received a bath at all, it was because their father was at home during their waking hours and gave it to them. The plaintiff failed to set an example in personal cleanliness in such things as bathing and washing her teeth and did not instruct the children in such matters.

The trial court found that the plaintiff was a fit and proper person to have the custody of the children, but also found that "the testimony shows she does too much visiting around. She should stay at home more and attend to her home."

And again in the court's memorandum decision, the trial judge stated:

"She is a good mother as the testimony shows, but has not displayed the proper attitude toward them (meaning the children) and has not kept the house in such a good condition as to merit the approval of even the casual visitor. Her own sister recognizes this fault, and in awarding the custody of the children to the plaintiff, I do so with the thought in mind and *with the understanding that she will improve* the conditions in the home and, if necessary, have her sister or someone else show her how to conduct a home in the manner of orderliness, cleanliness and tidiness. Lack of these virtues appears to be the main reason why the defendant was unable to get along with the plaintiff." (Parenthesis and emphasis ours.)

The court awarded the custody of the children to the plaintiff and divided the property equally, except that the provision was made that the plaintiff could occupy the home rent free until the younger child was eighteen years of age, unless she remarries sooner, when it is to be sold and the proceeds divided equally.

The defendant appeals and assigns as error the granting of the custody of the children to the respondent; the finding that she was a fit and proper person to have such custody; granting the respondent the right to occupy the home rent free; and in providing that the appellant should pay certain purported marital community obligations incurred by re-

spondent during the pendency of the action for which no evidence was offered.

A mother's moral unfitness need not be proved in order to justify the court in awarding the custody of the children to a father. *Burke v. Burke,* 153 Wash. 97, 279 Pac. 87; *Lindblom v. Lindblom,* 22 Wn. (2d) 291, 155 P. (2d) 790; *Hathaway v. Hathaway,* 23 Wn. (2d) 237, 160 P. (2d) 632.

In the case of *Eliason v. Eliason,* 10 Wn. (2d) 719, 118 P. (2d) 170, at p. 720, this court stated:

"To narrate the evidence would serve no useful purpose. It is sufficient to say that appellant neglected her child on numerous occasions, and conducted herself in a manner unbecoming for a mother. That respondent may have been partially to blame does not mitigate the effect of her actions. It should be stated, however, *that appellant was not shown to have been guilty of any immoral conduct.*

"Nevertheless, we have always recognized the principle that the welfare of the child is of paramount consideration in ascertaining its custody. *In re Day,* 189 Wash. 368, 65 P. (2d) 1049; *Flagg v. Flagg,* 192 Wash. 679, 74 P. (2d) 189. Furthermore, in cases of *Burke v. Burke,* 153 Wash. 97, 279 Pac. 87, and *Broesch v. Broesch;* 159 Wash. 409, 293 Pac. 464, this court has, while not in any way disregarding the rule for which appellant contends, modified it in special cases in order to give precedence to the rule that the paramount consideration of the courts is the welfare of the child." (Italics ours.)

It appears that the court granted the respondent custody of the children with the hope and upon the condition that she would improve the home conditions. We think the decree should have been based upon the past eight years' experience as to the present facts, and that the possibility for respondent's improvement in the future can best be provided for by a modification of the decree after the changed circumstances are established.

The decree awarding a divorce to both parties will not be disturbed, but the cause is remanded to the trial court with directions to award custody of the children to the father; to divide the property equally between the parties; to award the respondent fifty dollars a month alimony for a

period of a year; to retain jurisdiction as to custody of the children pending future developments; and to strike from the decree the provision for payment by the appellant of obligations incurred by the respondent during the pendency of the action. Costs upon appeal will be allowed to neither party.

The decree is affirmed as modified in accordance with the above directions.

STEINERT, SIMPSON, and CONNELLY, JJ., concur.