[No. 32629. Department One. February 15, 1954.]

ELBERT CHATWOOD, *Respondent,* v. RUTH CHATWOOD, *Appellant.*[1]

*Cochran & Cochran,* for appellant.

*O'Leary, Meyer & O'Leary,* for respondent.

[1]Reported in 266 P. (2d) 782.

FINLEY, J.—This is a divorce child-custody action. Elbert Chatwood married Ruth Chatwood on September 6, 1947. One child, Bonnie Jean Chatwood, was born of the marriage on August 8, 1949. The parties separated on February 26, 1953. The husband took the minor child to the home of his parents, where he and the child have resided ever since. Ruth Chatwood secured employment in Tacoma, Washington, and lives there in a small apartment. After the separation, the husband instituted an action for a divorce in which he asked for custody of the minor child. Ruth Chatwood cross-complained for a divorce and for custody of the child. The trial court granted a divorce to Elbert Chatwood and placed the minor child in his custody for so long as the child and the father should live with the paternal grandparents of Bonnie Jean, in Thurston county, Washington. The mother was granted visitation rights, but was denied a divorce.

In this appeal, Ruth Chatwood questions the action of the trial court in (a) granting a divorce to the husband; (b) denying a divorce to her; (c) denying custody of the minor child to her.

The trial court's finding of fact No. V reads as follows:

"The court further finds that the plaintiff is a fit and proper person to have the care, custody and control of the minor child of the parties and finds that said child has been living with the plaintiff since February 26, 1953 at the home of his parents in Thurston County, State of Washington; the court finds that the home of the plaintiff's parents is an excellent home for the child, and that the plaintiff's mother is taking excellent care of said child, and that the child is now in good health; that said home is a country home and provides adequate facilities for the care and upbringing of said child. The court further finds that the defendant does not have adequate facilities to care for said child in that she is living in a small apartment in the City of Tacoma and that she is working at a laundry in Tacoma on the average of forty-four and one-half hours a week, and that she proposed in the event that the custody of the child were awarded to her to place said child in the home of a neighbor to be cared for during the day. The court further finds that prior to the separation of the parties on February 26, 1953

the defendant did not properly look after and care for said child in that she allowed her to wander away from home along a highway on which there was considerable traffic, and that on several occasions the child was found several blocks from home. The court further finds that it is to the best interests of said child that it be placed in the custody of its father so long as he lives with his parents at their present home; provided, however, that the defendant shall have the right to have said child with her every other week-end and on other special occasions such as holidays."

The trial court's finding of fact No. VI reads:

"The court further finds that on about February 26, 1953 the defendant told the plaintiff to take the minor child of the parties and leave their home, which the plaintiff did, and that the defendant likewise informed the plaintiff that she no longer desired to live with him, and that she immediately thereafter on or about the 28th of February, 1953 left the home of the parties and went to Portland, Oregon, but returned from Portland, Oregon shortly thereafter during the first part of March, 1953 and took some of the furniture of the parties and sent to Portland to be stored, and thereafter immediately went to Tacoma and rented an apartment and secured a job and left the minor child of the parties with the plaintiff, who was then residing at the home of his parents. That the defendant has informed plaintiff on numerous occasions that she no longer cares for him and has used vile and obscene language to the plaintiff, all of which conduct constitutes cruelty, and that for some time last past the defendant has assumed and maintained toward the plaintiff an indifferent attitude and has made no attempt to conceal the fact that she has neither affection nor regard for the plaintiff, and has by numerous annoying acts and words made the home life of the plaintiff burdensome, so that it is impossible for the plaintiff and the defendant to longer live together as husband and wife, all of which acts and conduct of the defendant are without just cause and provocation."

The trial court's finding of fact No. VII reads:

"The court further finds that the evidence does not sustain the allegations contained in paragraph VI of defendant's cross-complaint, and that the evidence does not show that the defendant has any grounds for divorce."

Based upon the above-quoted findings, the trial court entered its conclusions of law and judgment in favor of the plaintiff father and adverse to the defendant mother, as heretofore indicated. We think that the appellant's assignments of error in her brief here on appeal should be considered as a proper presentation of her contentions for our review.

As to the action of the trial court in granting a divorce to the husband and denying one to the wife, we are not convinced that the evidence preponderates against the pertinent findings. These findings support the conclusions of the trial court: that Mr. Chatwood is entitled to a divorce and that his wife is not.

The only remaining question relates to the propriety of the action of the trial court in placing the minor child in the custody of the father. We are convinced that the evidence does not preponderate against those portions of the trial court's findings, quoted hereinbefore, which relate to the matter of custody. Consequently, appellant's assignments of error, directed at such findings, are without merit. The facts found by the trial court become the established facts of this case. *Allen v. Saccomanno,* 40 Wn. (2d) 283, 242 P. (2d) 747.

Appellant contends that the trial court's conclusion of law, placing custody of the minor child with the father, is in error. In this connection, appellant urges that the trial court's findings indicate nothing as to any unfitness on the part of the mother. Decisions of this court (among them *Freeland v. Freeland,* 92 Wash. 482, 159 Pac. 698; and *Prothero v. Prothero,* 137 Wash. 349, 242 Pac. 1) are cited to the effect that children of tender age, particularly girls, will be placed in the custody of their mothers, unless it is clearly shown that the mother is an unfit and improper person. Appellant urges that, in the absence of any indication of unfitness in the findings and because of the positive statement in the trial court's memorandum opinion negating unfitness, the *Freeland* and the *Prothero* cases, *supra*, are controlling, and the trial court was in error in not placing the minor child in the custody of the mother.

■ We do not agree. In a long line of cases we have stated over and over again, *and quite positively*, that the so-called "tender years" doctrine, suggested by the *Freeland* and *Prothero* cases, while applicable to the particular facts involved in those cases, is not to be regarded as an inflexible, axiomatic principle to be applied in every case where the facts show (a) a child of tender years, and (b) a mother not susceptible to charges or suggestions as to unfitness. *Burke v. Burke,* 153 Wash. 97, 279 Pac. 87; *Broesch v. Broesch,* 159 Wash. 409, 293 Pac. 464; *Eliason v. Eliason,* 10 Wn. (2d) 719, 118 P. (2d) 170; *Myers v. Myers,* 21 Wn. (2d) 19, 149 P. (2d) 926; *Lindblom v. Lindblom,* 22 Wn. (2d) 291, 155 P. (2d) 790; *Hathaway v. Hathaway,* 23 Wn. (2d) 237, 160 P. (2d) 632; *Storgaard v. Storgaard,* 26 Wn. (2d) 388, 174 P. (2d) 309; *Maple v. Maple,* 29 Wn. (2d) 858, 189 P. (2d) 976; *Cooper v. Cooper,* 39 Wn. (2d) 786, 238 P. (2d) 1204.

In the *Myers* case, *supra,* it was pointed out:

"The appellant has cited to us many of our cases in which it has been said that the mother of a child should not be deprived of its custody, particularly if it be of tender age, unless it is clearly shown that she is so far an unfit and improper person that the custody of the child will endanger its welfare. *What we have said in those cases was not a pronouncement of a rule applicable to all cases. We have considered the welfare of the child as of paramount importance. We have said many times that each case must be considered upon its own facts and the situation then before the court. We have approved the awarding of children to their fathers when it appeared that their best welfare would be served by so doing. We have recognized that the trial court must necessarily have a wide discretion in such matters.* This must be so, because there are so many factors that must be taken into consideration, and these can become better known by the trial judge than they can by us from the printed record." (Italics ours.)

In the *Maple* case, *supra,* we said:

"In cases involving the custody of children, *the cardinal rule,* as repeatedly stated and always recognized by this court, *is that the welfare of the child, or children, is the paramount and controlling consideration. . . .*

"*It is not necessary to prove moral unfitness on the part of the mother* in order to justify the court in awarding the custody of the children to the husband and father; *the health and well-being of the children must be taken into consideration at all times.*" (Italics ours.)

In the *Storgaard* case, *supra,* we said:

"A mother's moral unfitness need not be proved in order to justify the court in awarding the custody of the children to a father."

In the *Hathaway* case, *supra,* we said:

"The appellant calls our attention to the cases we have decided in which we have held that the custody of children of tender years should ordinarily be awarded to their mother, unless it has been made to appear that she is so far an unfit and improper person that her custody of them would endanger their welfare. *The reasons given by the court as to why this should be done are sound, but the rule is not inflexible and must yield to circumstances. The welfare of the children is the paramount consideration* in cases of this kind. Each case must necessarily depend upon its own facts and circumstances. A wide discretion must be vested in the trial judge, because he has had the parties before him, and the trial of the case and development of the facts necessarily have given him a better opportunity to determine what would be best for the children than we can usually gain from the printed record." (Italics ours.)

The disposition of child-custody matters involves some imponderables. Among other things, human knowledge, and methods or procedures, available for analyzing and disposing of the problem of what will be most conducive to the best interest and welfare of children, have not been reduced to an exact science, and may never be, considering the nature of the problem and the variety of known and unknown factors bearing upon it. In this connection, just in passing, *it may be worth while* to note that a strictly *adversary proceeding*, with the contending parties, their relatives, friends, and supporters often testifying in a diametrically opposite manner (particularly as to matters of opinion), *may not be too conducive to reaching the best and most ideal results in custody cases.*

Where the law recognizes that grounds exist for a divorce, and one or both parties determine upon that course of action,

the courts must reach a decision as to the custody of any minor children of the marriage. Obviously, custody is not to be given to both parents. Although the responsibility imposed upon the courts frequently presents a most difficult question as to what custody disposition will best serve the interests and the welfare of the children, the responsibility must be met. It cannot be side-stepped by the judges of our courts for more pleasing, strictly personal, or other pursuits, as sometimes happens in the case of too many parents. Feelings of uncertainty on the part of judges in disposing of complicated custody matters are not eased by knowledge of our alarmingly high rate of juvenile delinquency, or by an awareness of the fact that even the best-intentioned and the most intelligent parents, unfortunately, are often not too successful in trying to figure out what would be most conducive to the best interests and welfare of their children.

In the case of *In re Walker,* 43 Wn. (2d) 710, 263 P. (2d) 956, we observed:

" . . . that the complexities of the problems presented in child-custody matters would tax the wisdom of Solomon."

In reviewing the long line of custody decisions of this court, several significant guiding principles or considerations emerge. From time to time these may serve to aid the trial courts and this appellate court in meeting the responsibility of attempting to resolve problems of child custody. These guiding principles and considerations, gleaned from previous child-custody decisions, might be outlined somewhat as follows:

1. Each case must be considered and determined separately, upon its own facts and the situation before the court;

2. The best interests and welfare of the children in custody matters are the paramount and controlling considerations. The interests of parents, including claims of the right to child custody, are subsidiary in relation to consideration of the welfare of their children;

3. Those factors usually inherent in the mother-child relationship must be considered in relation to the age and sex of the children. However, in this connnection, socially

desirable traits of character, emotional maturity, economic ability or stability of the mother, cannot be disregarded;

4. The findings of the trial courts will be accepted as verities on appeal, unless the record evidence clearly preponderates against such findings;

5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.

In the instant case, the significant evidence of the contending parties is in absolute conflict. If we were the triers of fact and were making an initial determination here, we might very well decide in favor of the appellant's contentions. A decision depriving this mother of the custody of her minor daughter certainly is not an easy one. It is difficult and disturbing, and we are reluctant to reach that result. However, considering the situation in this case as it was presented to the trial court, and the fact that it has been presented to that court and a decision reached, and considering all that we have said hereinbefore, it is our best judgment that the custody disposition made by the trial court in this case should not be disturbed. The judgment is in all respects hereby affirmed.

GRADY, C. J., MALLERY, HAMLEY, and OLSON, JJ., concur.