*In the Matter of the Guardianship of* Dawn Palmer.
Margaret Spalding, *as Guardian, Petitioner,* v. John
Palmer, *Respondent.*

*Betty Taylor Howard,* for petitioner.

*Cummings & Durkan* and *James B. McCabe,* for respondent.

Swanson, J.—Dawn Palmer is the 8-year-old daughter of John J. and Sharon Palmer who were married in 1960, divorced in 1965, and remarried to each other in 1971. On May 7, 1968, Margaret Spalding, Dawn Palmer's maternal grandmother, was appointed guardian of Dawn Palmer pursuant to her petition, at a time when the whereabouts of both natural parents were unknown to her. On September 24, 1971, upon the petition of the respondent John J. Palmer, following his remarriage to Sharon, the trial court ordered the termination of Margaret Spalding's guardianship of Dawn Palmer in favor of the natural parents, John and Sharon. By writ of certiorari granted by this court on

November 22, 1971, the petitioner Margaret Spalding seeks reversal of the trial court order.

Of all areas subject to litigation in domestic relations, perhaps the area in which it is most difficult for a court to determine the "right" decision is that of child custody. In this connection, the words of Justice Finley, speaking for the court in *Chatwood v. Chatwood*, 44 Wn.2d 233, 238, 266 P.2d 782 (1954), are, as counsel for respondent suggests, particularly appropriate:

> The disposition of child-custody matters involves some imponderables. Among other things, human knowledge, and methods or procedures, available for analyzing and disposing of the problem of what will be most conducive to the best interest and welfare of children, have not been reduced to an exact science, and may never be, considering the nature of the problem and the variety of known and unknown factors bearing upon it. In this connection, just in passing *it may be worth while* to note that a strictly *adversary proceeding*, with the contending parties, their relatives, friends, and supporters often testifying in a diametrically opposite manner (particularly as to matters of opinion), *may not be too conducive to reaching the best and most ideal results in custody cases.*

The testimony making up the imponderables in the case at bar may be summarized as follows: The parties are generally agreed that John J. and Sharon Palmer's first marriage together was not a happy one. They were married on May 22, 1960, following John J. Palmer's divorce from his first wife, at which time Sharon Palmer was pregnant with the couple's older child, John Courtney Palmer who was born in September, 1960. Sharon Palmer has had a history of petit mal epilepsy, and her mother Margaret Spalding testified that Sharon had at least one grand mal seizure when she was 14. Sharon Palmer testified that she and John lived in Los Angeles, California, where their marriage was not a stable one, that she was unhappy in the marriage and often called her mother "to cry on somebody's shoulders," and that she told her mother on occasion that there was no food in the house. Sharon acknowledged that she attempted suicide on one occasion while still in Califor-

nia. Margaret Spalding testified that in at least one of the telephone conversations she had with her daughter, Sharon complained that she was afraid of John, that John would sometimes drink at night, and if she were in bed he would bang her head against the wall until she awakened. Both John and Sharon emphatically denied this testimony. In any event, in late 1963, Sharon, who was again pregnant, persuaded her mother to come to Los Angeles and take her and her son John Courtney home to Seattle.

On January 10, 1964, Sharon gave birth to Dawn Palmer in Seattle. Margaret Spalding paid all of the expenses of the birth, and proceeded to support Sharon and the children from her earnings as a real estate saleswoman. During this period John Palmer made no financial contribution with the exception of an insurance payment he received in the amount of $1,000 which was turned over to Sharon who in turn, according to her testimony, gave "500 or 600 dollars" of it to her mother. There then followed a rather erratic series of events. On October 22, 1965, John and Sharon were divorced, and Sharon was awarded custody of the children. She held a series of jobs, but was beset with mental and emotional difficulties. She testified that she and the children lived apart from her mother for a period of 2 months in 1966, but this arrangement was terminated when she again attempted suicide and was hospitalized. Margaret Spalding testified that in August, 1966, Sharon sent John Courtney Palmer down to California to live with his father. She testified that she sold her home in December, 1966, and that she and Sharon moved into adjoining apartments. She stated that this arrangement continued for 2 to 3 months, but Sharon made a third suicide attempt and was hospitalized in 1967. She also testified that thereafter she and Sharon and Dawn moved to another apartment, and for a time Sharon's condition improved, but that one weekend she returned from a skiing trip to find Sharon gone and Dawn alone in the apartment. On May 7, 1968, Margaret Spalding was appointed guardian of Dawn Palmer when she did not know the current address of either natural

parent. In the interim, she had heard from Sharon by telephone and eventually permitted Sharon to return home to live with her and Dawn when Sharon agreed to see a psychiatrist.

In January, 1970, at a time when she was considering marriage to a man with two adolescent daughters, Sharon petitioned the trial court for termination of Margaret Spalding's guardianship of Dawn Palmer, but her petition was denied. From January to December, 1970, Sharon was employed and contributed $50 per month to her mother. In August, 1970, she commenced to live with her former husband John J. Palmer, the respondent herein, who had been remarried and divorced from his third wife. Since September, 1970, John and Sharon and their son John Courtney Palmer have been living together in California. On May 8, 1971, John and Sharon were remarried, and on June 4, 1971, John J. Palmer commenced the action in the present case which resulted in the trial court's order on September 24, 1971, terminating Margaret Spalding's guardianship of Dawn Palmer.

Petitioner Margaret Spalding contends that the trial court failed to take into account what she urges is the primary consideration in the resolution of this case, namely, the welfare of the minor child Dawn Palmer. She urges that both parents are unfit at the present time, and therefore it was error for the court to terminate her guardianship of Dawn Palmer in favor of Dawn's natural parents. She points out that Dawn does not relate emotionally to her natural mother and that she does not know her father who has seen her only twice. Further, petitioner indicates that Dawn has no close relationship with her natural brother. The basic contention is that because Dawn is too young to adjust to moving to another state to live with "three strangers," it is in her best interests to continue her guardianship in petitioner who has been Dawn's primary comfort and support.

Respondent John J. Palmer urges that the guardianship was at best a temporary arrangement necessitated by the

temporary mental illness of Sharon Palmer and the absence of respondent; that the respondent and Sharon Palmer have reconciled their differences, have remarried and since September, 1971, have lived together with their son John Courtney Palmer as a family unit. Respondent's primary contention is that there has been no showing that he and his wife are unfit to care for Dawn Palmer, and therefore as natural parents they have a right to do so which is superior to that of the maternal grandmother Margaret Spalding.

The trial court, after reviewing the facts previously indicated, entered findings of fact 9 and 10 as follows:

[9]

That the child has received excellent care and attention as well as medical care under the supervision of MARGARET SPALDING, and relates to her as a mother; that the home of MARGARET SPALDING is and has been a proper place for the maintenance of said child.[1]

[10]

That the marriage of the natural parents presently appears to be stable; that they now reside in Los Angeles, California and are functioning as a family unit; that they propose to have a large house and to reside therein with their son, JOHN C. PALMER, now 10 years of age, and the subject child, DAWN PALMER, now 7-1/2 years of age; that the same would be a suitable and adequate home.

█ The trial court held that there had been no showing of unfitness with respect to either of the natural parents, or their ability to properly care and provide for Dawn Palmer, and that the circumstances for which the guardianship was established no longer exist and that therefore the guardianship should be terminated. We are unable to say that the

---

[1]The trial court also found in finding 8 that Dawn Palmer suffers from a chronic urinary condition and that major surgery for this condition was postponed until after the trial. Petitioner indicates that the surgery has been done since the trial at her expense and that the respondent has not contributed. Respondent indicates that it is not clear that the surgery was immediately necessary, but that he was willing to pay for it if the child were brought to California where the cost would be covered by his local medical insurance.

record in this case indicates a manifest abuse of discretion on the part of the trial court which would require this court to substitute its judgment for that of the trial court. The trial court could well have believed the testimony supporting respondent's contention that he and his wife are fit parents, including the testimony of a co-worker that Sharon Palmer worked well under the stress of a demanding job from March, 1969, until December, 1970, when she left to be with John Palmer; the testimony of Sharon Palmer that she has not required psychiatric treatment since 1969; and the testimony of John and Sharon Palmer indicating that their second marriage to each other is a successful one. Moreover, the findings of fact and conclusions of law of a trial court are of particular importance in child custody litigation. *Chatwood v. Chatwood, supra; Richards v. Richards,* 5 Wn. App. 609, 489 P.2d 928 (1971). As the *Chatwood* court observed, 44 Wn.2d at 240:

> Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.

Petitioner contends, however, that the court's holding did not take into account the welfare of Dawn Palmer which petitioner urges is controlling. She relies primarily on *Shultz v. Shultz,* 66 Wn.2d 713, 404 P.2d 987 (1965), and *Storgaard v. Storgaard,* 26 Wn.2d 388, 174 P.2d 309 (1946). Both of these cases were divorce litigation contests between natural parents over the issue of which of them should have custody of the children of their marriage. In those cases the court awarded custody based upon its view of which parent would best serve the welfare of the children. We believe that these cases are distinguishable from the situation that is presented when the custody contest is not between the natural parents, but rather, as in the instant case, between the natural parents and some third party,

here, the maternal grandmother. In the latter situation the inherent right of natural parents to raise their own children must also be considered. *See In re Frank,* 41 Wn.2d 294, 248 P.2d 553 (1952), and cases cited therein.

■ We have determined that the trial court did take into account the welfare of Dawn Palmer when it terminated her guardianship in Margaret Spalding in favor of the natural parents,[2] and in this connection we have concluded that, as respondent contends, the correct rule of law to be applied in this case is that stated by our state Supreme Court in *In re Brenner,* 154 Wash. 400, 282 P. 486 (1929), at 402:

> before natural parents can be deprived of the custody of their child, it is necessary that there be a showing that they are not fit and proper persons to have such custody and that the welfare of the child demands that its custody and control be taken from them. In *Lovell v. House of the Good Shepherd,* 9 Wash. 419, 37 Pac. 660, 43 Am. St. 839, it was said:
>
> "While it is true that the welfare of the child should be the first consideration of the court, yet the right of the parent is not to be disregarded, and it is assuming a grave responsibility to deprive parents of the care, control, custody and education of their children because they do not come up to the standard of perfection that we have established for our own action in that respect. . . . and a case should be made out which is sufficiently extravagant and singular and wrong to meet the condemnation of all decent and law-abiding people with-

---

[2] In his oral opinion the trial judge indicated that he had weighed the welfare of Dawn Palmer as follows:

This move for this child will truly be traumatic. It will not be easy for this child to make this move. All parties better realize that and better do their best to make this smooth as possible.

In my judgment, the child will be better off in the long run growing up with her own parents as long as they have a family unit that is proper and as long as they are fit and proper.

I think she would be better of [sic] growing up with her brother in the 10, 11 or 12 years we are now thinking about before she is an adult, than growing up with her grandmother.

The move can easier be made now than at a later time. I think the time has now arrived, and the guardianship should be terminated.

out regard to religious belief or social standing before a parent should be deprived of the comfort or custody of a child."

See also In re Hudson, 13 Wn.2d 673, 126 P.2d 765 (1942), and In re Day, 189 Wash. 368, 65 P.2d 1049 (1937), where it is stated at page 382:

The principle that the welfare of the child is the paramount consideration has been recognized and followed by this court in many cases. [Citations omitted.] The two principles, then, the welfare of the child and the right of the parent, must be considered together, the former being the more weighty.

In the case at bar, the trial court concluded that after his review of the evidence it was his opinion that Dawn Palmer will be better off in the future if she is reunited with her natural parents. The record does not compel us to substitute a contrary opinion. Further, our review of the record indicates that there is substantial evidence to support the trial court's finding that the second marriage of Dawn Palmer's natural parents is a stable one and that they will provide Dawn with a suitable and adequate home. The trial court also concluded as a matter of law that there was no showing that either of the natural parents, the respondent John J. Palmer or his wife Sharon, are unfit to properly care and provide for their daughter Dawn Palmer. We agree. In the absence of a showing of unfitness such that the welfare of the child is clearly in jeopardy, natural parents may not be deprived of the custody of their child in favor of a third party. In re Brenner, supra. No such showing has been made in this case.

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied April 3, 1972.

Review granted by Supreme Court May 22, 1972.