[No. 32381.   Department Two.   October 22, 1953.]

STEPHANIE L. SWEENY, *Appellant,* v. CLARENCE SWEENY,
*Respondent.*[1]

'Reported in 262 P. (2d) 207.

*Meier & Murray,* for appellant.

*Wettrick, Flood & O'Brien* and *Clarence A. Lirhus,* for respondent.

FINLEY, J.—This is an appeal from an order of the superior court modifying the provisions of a divorce decree as to the custody of a minor child.

The events leading to this litigation are as follows: On February 29, 1952, after a contested hearing, each of the parties was granted a divorce from the other. The divorce court found that each parent was a fit person to have custody of their minor son. Despite the fact that Mrs. Sweeny was of a highly emotional nature in contrast to Mr. Sweeny, who was of a more calm nature, the child's custody was given to the mother, subject to liberal visitation rights by the father, who was also granted the right to have the child with him for one week during the father's summer vacation. The decree specifically provided that neither parent could remove the child from the state without first obtaining an order from the court.

It is important to note that in the divorce proceedings Mrs. Sweeny was represented by Mr. L. C. Brodbeck, a Seattle attorney, and that he had not been discharged as a matter of record when certain events occurred which are significant in this appeal.

Prior to June 12, 1952, Mr. Sweeny, orally and by writing, informed Mrs. Sweeny that he wished to have their son with him during his summer vacation from July 5th to July 13th, pursuant to visitation privileges. Despite this notice, Mrs. Sweeny, on June 12, 1952, filed a motion requesting that

she be permitted to remove the child from the jurisdiction. The motion was heard on June 17, 1952. It was denied. Mrs. Sweeny did not appeal. However, in absolute disregard of the order of the court, she forthwith took the child with her to California. She is contending here that her actions were not contumacious because, in fact, she has never been found guilty of contempt. In passing, we observe that however that may be, it is quite clear that she deliberately and willfully disobeyed the court's order.

Thereafter, on July 25, 1952, Mr. Sweeny petitioned the court to modify the divorce decree by granting custody of the child to him, with only visitation rights to Mrs. Sweeny. The petitioner alleged that Mrs. Sweeny had violated the divorce decree and a subsequent court order by removing the child from the jurisdiction; also, that she had refused to disclose to him the whereabouts of their son; that Mrs. Sweeny's action had deprived him of his visitation rights and had shown her to be an unfit mother for the child. An order was issued requiring Mrs. Sweeny to show cause, on August 21, 1952, why the petition should not be granted. On August 14th, Mr. Sweeny petitioned the court for permission to serve the show cause order on Mrs. Sweeny's attorney of record, Mr. L. C. Brodbeck. The petition alleged that Mrs. Sweeny's whereabouts were unknown, but that she was "represented by her attorney of record, L. C. Brodbeck . . ." On that same date, August 14th, service on Mr. Brodbeck was authorized by court order.

On September 4, 1952, a hearing was held before Judge Long of the superior court for King county. Only Mr. Sweeny and his attorney were present. A minute entry shows that the only testimony offered was that by Mr. Sweeny.

Later, on September 29, 1952, Mr. L. C. Brodbeck was served with written notice that fact findings and conclusions of law would be presented to the court on October 7, 1952. On the latter day, the fact findings, conclusions of law, and order were signed. Mr. Brodbeck was present.

In the findings of fact, the trial court indicated that the

show cause order had been duly served on the attorney of record, L. C. Brodbeck; that previously, Mrs. Sweeny, in disregard of court orders, had removed the child from the state and had deprived Mr. Sweeny of visitation and vacation rights. In the conclusions of law, the court indicated that Mrs. Sweeny, by her acts, had shown herself to be an unfit person to have custody of the child, and that it was for the best interests and welfare of the child that custody be transferred to Mr. Sweeny, and it was so ordered.

On October 8, 1952, L. C. Brodbeck, as "attorney for Mrs. Sweeny," served and filed a motion for judgment notwithstanding the court's decision or, in the alternative, for a new trial. These alternative motions were heard on November 7, 1952, on which date, *for the first time,* L. C. Brodbeck explained that he had appeared in the proceedings only as *amicus curiae,* and because the show cause order had been served on him. In an affidavit, Mr. Brodbeck stated that, although he had been the attorney for Mrs. Sweeny in the original proceedings, he had completed his services, had been paid, and had been discharged.

On November 13, 1952, the motions for judgment notwithstanding the decision of the court and the motion for a new trial were denied by written order. On December 3, 1952, Mr. Brodbeck filed his notice of withdrawal, without naming or suggesting a substitute attorney. On December 9, 1952, Mrs. Sweeny's present attorneys filed notice of substitution and, at the same time, filed notice of appeal.

Before proceeding to the assignments of error, we note, emphasize, and quote finding of fact No. X:

"That the defendant, after discovering that plaintiff had left her usual place of abode in Seattle, Washington, ascertained her forwarding address and wrote a letter to that address causing said letter to be registered with a return receipt requested. That the signature on the return receipt was the signature of plaintiff at her forwarding address of 512 Van Ness Avenue, San Francisco, California, and was receipted for by her on July 15, 1952. That attempted process of the petition to modify the decree of divorce and the order to show cause on plaintiff at that address was unsuccessful.

That in defendant's letter to plaintiff, the defendant requested information as to his son's present whereabouts and as to his son's and plaintiff's return to Seattle, Washington. That plaintiff failed and refused to reply to defendant's letter in any manner whatsoever. That on August 21, 1952, the return date of the order to show cause why the prayer of the petition should not be granted, at the request of plaintiff's attorney of record, the above San Francisco, California address was furnished to plaintiff's attorney of record in order to allow him to get in touch with his client."

Appellant makes some eight assignments of error but concedes that they present only two principal legal issues: (a) whether the court acquired jurisdiction of the appellant by authorizing service of process on her former attorney; and (b) whether it can be said that appellant is an unfit mother, because of her removal of the child from the jurisdiction.

With regard to the first point, appellant appears to concede that the court retained continuing jurisdiction over the matter of custody by virtue of RCW 26.08.110, and that additional, new, or original service of process need not be made in modification proceedings. Nevertheless, appellant urges that reasonable notice relative to modification proceedings must be conveyed to an adverse party as a requirement of due process of law, and this whether the statute requires notice or not. See 76 A. L. R. 242, 253 c., "Modification of order, judgment, or decree of divorce as to custody of children;" 17 Am. Jur. 519-520, § 685, "Divorce and Separation;" 27 C. J. S. 1192, § 317c(2), "Divorce." We note that our own statute on the subject, RCW 26.08.170, provides that "notice of the hearing of said petition [to modify a decree] [is] to be given as the court shall determine."

Thus, the precise question presented here is whether, under the circumstances, service of the show cause order on Mr. Brodbeck (appellant's former attorney of record in the original divorce proceedings, which had occurred only a few months theretofore) was sufficient notice to appellant to satisfy the requirements of RCW 26.08.170 and the basic essentials of due process. In other words, the question is one as to the sufficiency of the notice under the circumstances rather than one as to whether any notice was given—the

necessity of some notice being a matter of statutory mandate, RCW 26.08.170, reading as follows:

"Petition for modification—Notice. Upon the filing of a properly verified petition to be entitled as in the original divorce or annulment action, together with a certified copy of the order, judgment, or decree sought to be modified thereby, the superior court of the county in which said petition is filed shall have full and complete jurisdiction of the cause and shall thereupon order such notice of the hearing of said petition to be given as the court shall determine."

The cases from other jurisdictions bearing upon the question of whether notice to an attorney of record constitutes notice to his client are in considerable conflict and are not too helpful. With this in mind, we turn to our own decisions on the subject.

The principal case relied on by respondent is *State ex rel. Jones v. Superior Court,* 78 Wash. 372, 139 Pac. 42. We think it is determinative of the question of notice in the case at bar. In the *Jones* case, *supra,* a petition had been filed in the superior court for modification of a divorce decree. It was served upon the attorneys of record of the relator's former wife. They appeared and objected to the jurisdiction of the court. It was contended that service of the petition on her former attorneys of record was not proper service upon the relator's former wife. The court took the position that, while reasonable notice of contemplated future action "might well be required as a measure of fairness," original process was not required because the original jurisdiction of the court was a continuing one for the purpose of possible custody modification.

Of even greater importance is what was said with regard to the continuing nature of an attorney's employment, absent his withdrawal as a matter of record. At page 375 of the *Jones* case, *supra,* we said:

"It follows from what we have said that service upon the attorneys of record is a sufficient service to warrant the court in hearing the petition of the parties seeking to modify the decree."

Emphasizing the matter of practical necessity, the court further said:

"Our holding that an attorney continues in authority until he retires by leave of the court and upon substitution of another attorney, is therefore a rule of necessity as well as one of sound reason and logical sequence."

We are convinced that the instant case is governed by the rule heretofore quoted from the *Jones* case, *supra.* Notice to Mrs. Sweeny's former attorney of record was authorized in the case at bar by specific court order, pursuant to RCW 26.08.170. The attorney of record had not withdrawn from the cause nor procured a substitution at the time of service upon him of the show cause order. He actually appeared in court ostensibly representing Mrs. Sweeny, filed and served motions in her behalf, although, after things appeared to be going badly for Mrs. Sweeny, he explained that he was acting in the capacity of *amicus curiae.* It is our considered opinion that the notice to the attorney of record was reasonably calculated to give Mrs. Sweeny notice of the pending proceedings and that it did provide reasonably adequate, legally sufficient, notice thereof. Actually, we cannot see how it can be said that Mrs. Sweeny has been deprived of any rights without due process of law. Fundamentally, it was her own action—in removing herself and the child from this jurisdiction in defiance of an explicit order of the superior court for King county—which prevented her from presenting her side of the case and having her day in court.

All we decide in this case is that, under the circumstances here involved, given the short space of time between the original decree and the modification proceedings and the fact that nothing of record shows that Mr. Brodbeck ever withdrew formally as appellant's counsel, other than his affidavit wherein he claimed he appeared as *amicus curiae* only, which was filed more than a month after he first appeared to make a motion for judgment notwithstanding the court's decision, it is not unreasonable to say that notice to Mr. Brodbeck was notice to appellant. What we will do in

other cases where the facts are different, must be left for future decision. Incidentally, what was said by the Nevada court in a similar case might well be repeated here:

"The main question in this case is whether service upon Mr. Springmeyer of plaintiff's notice of motion for an order modifying the divorce decree gave the district court jurisdiction to hear and determine that motion. *It cannot be laid down as a categorical rule applicable to all cases that service of notice of a motion to modify provisions in a divorce decree relating to the custody or control of minor children, made upon the attorney of record in the original divorce action, is never sufficient, nor that such service is always sufficient, to confer upon the trial court jurisdiction to entertain such a motion.* If the attorney of record for the adverse party in the original divorce action is still representing that party at the time notice of motion to modify is served upon him, the trial court acquires jurisdiction to hear the motion. . . . [Citing cases] In a case in Illinois, one of the jurisdictions relied on by relator, service on the attorney of record in the original divorce action was held sufficient when considered with other facts and circumstances. . . . [Citing case] In another Illinois case, under different circumstances, such service was held insufficient. [Citing case]" (Italics ours.) *State ex rel. Groves v. First Judicial Dist. Court of Ormsby County,* 61 Nev. 269, 125 P. (2d) 723.

It is noted in the *Groves* case, *supra,* that, in the absence of precise statutory direction regarding notice of modification proceedings, the courts are concerned more with the *reasonableness* of the notice under the circumstances prevailing than with the precise form or manner of notice. See, also, *Seaton v. Seaton,* 255 S. W. (2d) (Ark.) 954.

Finally, as to the contention of appellant that to apply the rule we have applied here would not be just, fair, or lawful in the face of Mr. Brodbeck's disclaimer of a right to act for Mrs. Sweeny, we have already indicated that Mrs. Sweeny is responsible for the problem facing her. She is responsible for presenting such a problem to the courts of this state. Certainly, her conduct in defying an express order of the court can hardly be said to be lawful or fair or conducive to an enjoyment of the rights of due process on the part of Mr. Sweeny.

We do not decide here whether she was in contempt of court and, if so, to what extent her contumacy would bar her from relief in the courts. But it is appropriate to point out here that she cannot take the law into her own hands when a court ruling, not to her liking, has been made against her. She knew that visitation rights had been given Mr. Sweeny by the decree; she knew that he was entitled to have the child during his summer vacation; and she knew that the court had forbidden her to remove the child from the jurisdiction. A reasonable person might have surmised that visitation of the child by his father was conducive to the welfare of the child and was so regarded by the court. In other words, visitation by a noncustodial parent involves not only consideration of the interests of that parent but additional considerations bearing upon or involving the welfare of the child.

Given her absolute defiance of the court's order by immediately removing the child and herself to California, it is not unreasonable to say that appellant's own acts prevented her from fully presenting her case, rather than the form, nature, and manner of notice we sanction here.

In attacking the trial court's conclusion that she was unfit to have custody, appellant refers us to *Schorno v. Schorno,* 26 Wn. (2d) 11; 172 P. (2d) 474, and to *Norman v. Norman,* 27 Wn. (2d) 25, 176 P. (2d) 349. In the former, we set out the three main guiding principles governing the award of custody of a minor child. We noted the primary consideration was the child's welfare, followed by the rule that, other things remaining equal, a child of tender years was to be awarded to the mother, if the mother be physically and morally fit. We noted the rule that great weight should be given to the decision of the trial court in custody matters because of the great advantage the trial court enjoys over us in matters of trial atmosphere and opportunity to observe witnesses personally, and to gauge first hand their candor and truthfulness. In the latter connection, obviously, candor and truthfulness do not always appear with crystal clarity from the written record with which we are con-

fronted on appeal. Generally speaking, the crux of the latter principle, boldly stated, is that the trial court is the forum where divorced parents, competing for custody of their children, should expect to win their lawsuits. In other words, on appeal, we are reluctant to disturb a custody disposition made by the trial court, and we will do so only upon a showing of manifest abuse of discretion by the trial court.

In the *Norman* case, *supra,* relied upon by appellant, we indicated that the dominant consideration was the welfare of the child, and that matters of custody could not be used to punish or reward either spouse. From this, appellant argues that the trial court should not have punished her for taking the child from the jurisdiction by subsequently depriving her of custody of the child. This argument of appellant is in some measure invited by a portion of the trial court's conclusion of law No. III, which reads:

"That the plaintiff, Stephanie L. Sweeny, *has deprived the defendant, Clarence Sweeny, of substantial rights* granted to him in the decree of divorce in the above entitled cause, and plaintiff by her action has shown herself to be an unfit mother for the child of the parties." (Italics ours.)

The reason stated by the trial court in support of its conclusion that appellant was unfit to have custody, admittedly does emphasize the fact that *respondent was deprived of visitation rights* by the mother's removal of the child to California; but this does not clearly imply that the change of custody was ordered by the court essentially for the purpose of punishing Mrs. Sweeny. Appellant's argument, and perhaps the above-indicated reasoning given by the trial court to explain the change in custody, places too much emphasis upon the rights of parents who become adversaries in divorce child-custody matters. It may be conceded quite frankly that, in the trial court's conclusion No. III, emphasis more properly might have been placed on the welfare of the child involved in legal controversy as an aftermath of divorce. While the divorced parents have legal rights and privileges, perhaps it should be said that those rights are most significant as between the parents themselves. Such rights become relative and subsidiary to the

rights of their child, certainly in terms of the best interests and the welfare of such child. The granting of visitation *privileges* does involve considerations of the feelings and interests of a non-custodial parent; but, as suggested above, other, and perhaps more important, considerations are involved. In the instant case, visitation of the father with his son may very well bear upon or actually be conducive to the welfare of the child. This, rather than the contrary, must be implicit in the granting of visitation privileges, otherwise visitation privileges would not be permitted. Actually, this aspect of the matter may have been of considerable significance to the trial court in granting visitation privileges to the father in the first instance. In this sense, the action of Mrs. Sweeny was prejudicial to the best interests of the child, as well as prejudicial to the father, although only the latter factor was emphasized in the portion of conclusion No. III quoted heretofore.

■ In assuming responsibility for the custody and care of children of divorced parents, the courts are entitled to expect a custodial parent to assume some responsibility and to act in a reliable manner in performing any responsibility imposed by the court as to the care of a child. In the instant case, Mrs. Sweeny's conduct was not solely a matter of violating a court order or of disrespect for the court. That alone is a serious matter and might very well bear upon the determination of a parent's fitness to discipline, instruct, and care for a child. Certainly, a lack of respect for the courts, for law and order, may quite conceivably set an example not conducive to good citizenship or to a well-adjusted character or personality on the part of a child.

■ Every child-custody case is in a sense unique because of variable factors peculiar to it. Consequently, we, are not prepared to lay down a flat, unbending rule to the effect that every instance of willful defiance of a court order justifies a change in custody. Nor would such defiance mean in every case that a parent was *per se* morally unfit to have custody of his children. Exact calculation may be difficult, but there can be no doubt that, to some extent, respect for law and

order, and compliance with court orders, does bear upon fitness.

The court found that the father is a fit person to have custody of the child, and, in effect, that the changed circumstances warranted a change in custody. Under the facts and circumstances here involved, it is our opinion that there was no manifest abuse of discretion or error on the part of the trial court. The order is hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.