[No. 35386. *En Banc.* December 15, 1961.]

ESTAMAE KEHUS, *Appellant*, v. JOHN R. EUTENEIER,
*Respondent.**

*Leonard W. Smith*, for appellant.

*Powell & Nethercutt*, for respondent.

DONWORTH, J.—This is an appeal by Estamae Kehus
(appellant) from an order of the Superior Court of Spokane
County denying a petition to modify a divorce decree ren-
dered by an Oregon court. The original decree was entered
in favor of John R. Euteneier (respondent) on January 17,
1953. In addition to dissolving the marriage between appel-
lant and respondent, the original Oregon divorce decree
gave custody of both children born of the marriage to Mrs.
Euteneier (now Mrs. Kehus). Some months later, on May
15, 1953, the decree was modified by the Oregon court to

*Reported in 367 P. (2d) 27.

give effect to a stipulation signed by both parties transferring custody of Joan Euteneier, the older of the two children (both girls), to Mr. Euteneier, her father.[1]

In the present proceeding (which was heard by the superior court May 13, 1959), Mrs. Kehus sought to have the custody of her daughter Joan restored to her.

The factual background of this custody contest is complicated because, during the six-year period immediately preceding the trial, respondent, having custody of the older daughter, Joan, lived in various places in Oregon and Washington, while appellant, having custody of the younger daughter, Joy, followed a similar course. Neither party knew where the other was living during most of this period. Occasional attempts by appellant and Joy to communicate by letter with respondent and Joan appear to have been frustrated by respondent's refusal to accept delivery of mail. Respondent testified that he had not seen his younger daughter at all during this time.

At the present time Joan is nearly eleven years old and has been in the exclusive custody of her father for more than eight years.

The principal change in conditions between the 1953 hearing in the Oregon court and the 1959 hearing in the Superior Court of Spokane County was the remarriage of appellant and the establishing of a suitable home where Joan could be brought up with her sister, Joy.

The ultimate issue presented to the trial court was whether the welfare of the older child (Joan) would be best served by removing her from her father's home and transferring custody to her mother.

The trial court entered the following findings of fact to which appellant assigns error:

---

[1]There is some mention, both in the statement of facts and in the briefs of a petition by Mrs. Kehus to the Oregon court in May, 1958, involving this same issue, namely the custody of her daughter Joan. The petition was apparently denied. However, there is neither an exemplified copy of any court order nor any reference whatsoever in the record to this most recent action by the Oregon court. For this reason, we are compelled (as was the trial court) to disregard the 1958 proceedings in Oregon in determining the cause now before us.

"IV. That the plaintiff, Estamae Kehus, has remarried twice since the decree of divorce was entered January 17, 1953; that the plaintiff has failed to show a change in conditions or circumstances which would warrant a modification of the decree of divorce as the same has previously been modified.

"V. That the defendant has provided a suitable home for the daughter Joan Euteneier and the said child is living in that home. That the said child is healthy and well cared for and the defendant has raised her as a normal child. That the said child is receiving proper and adequate teaching and training and she is making satisfactory progress in school. The said child is happy and appears well adjusted in her present surroundings.

"VI. That the defendant and the child, Joan Euteneier, have lived comfortably on the wages and salary of the defendant. That the plaintiff is presently employed as a school teacher and the defendant is presently unemployed.

"VII. The best interest of the child Joan Euteneier will be served by continuing the divorce decree in full force and effect as the same was modified May 15, 1953."

As indicated above, the question before us is whether or not the trial court abused its discretion in declining to transfer the custody of Joan Euteneier (now almost eleven years old) to her mother, Mrs. Kehus.

The conditions under which Joan and her father presently live are noteworthy. The quarters which the child and her father now occupy in Spokane are small and cramped, consisting of one bedroom, a living room (with a daveno bed), and a "cubby-hole" kitchen. It might well be doubted whether these surroundings afford this child, about to enter the crucial years of adolescence, the privacy she should have. Furthermore, Mr. Euteneier is unemployed much of the time. His employment is seasonal in a lumber planing mill in Spokane. At the time of this hearing, in 1959, Mr. Euteneier testified that he expected to be employed in the near future, but would be working on a four-to-midnight shift. At such time his daughter Joan would be placed in the care of someone outside the family and would stay with her father only on week ends. Respondent testified regarding the care of Joan:

"Q. Who takes care of the child now when you work? A. I do as long as I am not employed. I do. Q. When you are employed who will take care of the child? A. I had Mrs. Jones last year and Mrs. Schutte took care of her for two seasons. Q. Now when these other ladies take care of Joany does she live in your home? A. No, I take them [her] to their home. Q. And when she lives with these other ladies does she stay with you? A. She stays with me week-ends, Saturdays and Sundays."

Mr. Euteneier testified that his annual income was "around sixteen to eighteen hundred dollars," plus about five hundred dollars a year unemployment compensation.

In contrast to Mr. Euteneier's situation, Mrs. Kehus is an experienced school teacher and principal, earning approximately six thousand dollars per year. Her present husband earns an additional four thousand dollars per year. Mrs. Kehus resides with her husband in a home which might comfortably accommodate an additional child.

While the trial court correctly noted that Mrs. Kehus is presently married to her third husband, there is no indication that either of her two former marriages (the first of which was to respondent) terminated for any reason which would reflect upon appellant's moral character or her ability to rear children satisfactorily.

As stated before, under the original divorce decree the custody of both children was given to Mrs. Kehus. According to her own testimony, which was unrefuted, Mrs. Kehus acquiesced in the 1953 transfer of custody by reason of the fact that she was ill at the time and was not then in a position, either physically or financially, to care for both children adequately. She stated that she thought she was consenting to a temporary arrangement when she signed the stipulation in May, 1953. In no manner of speaking could appellant's relinquishment of custody be said to constitute an abandonment of the child. The trial court made no finding that appellant was not a fit and proper person to have Joan's custody.

It also should be noted that the trial judge interviewed Joan Euteneier in his chambers and that the child indicated her satisfaction with the present custody arrangement. He

discussed this interview at some length in his oral decision and included the following comment concerning it:

"After the manner of children, she was quite sincere in her statements. I may say, and probably I shouldn't, that she wants to stay where she is right now.

"She says she is very happy there and I pointed out to her that her other little sister was at home and all those things. It didn't impress her in the slightest. She thought she was getting along fine and wants to continue that way.

"Now, of course, her wishes in the matter or the wishes of any child, are not controlling. It is an element sometimes, and probably has some more or less importance at all times, but it is a matter to be considered.

"Now in appearance she is an exceedingly intelligent child. The school authorities indicate that she is above average in her studies. There are no disciplinary problems apparently, and while she came into the school a shy and reserved child, it was because her security had been jeopardized and because of the matter of the feeling that was communicated to her, and she knew something was wrong."

■ A divorce decree with respect to the custody of minor children is always subject to modification upon a showing of a material change in circumstances affecting the welfare of the child or children involved. *Applegate v. Applegate*, 53 Wn. (2d) 635, 335 P. (2d) 595 (1959); *Schaefer v. Schaefer*, 36 Wn. (2d) 514, 219 P. (2d) 114 (1950). However, by the same token, this court pointed out in the *Applegate* opinion that:

" . . . the trial court must have a wide latitude of discretion in such matters, and that its disposition of custody will not be disturbed in the absence of a manifest abuse of discretion."

As authority for this rule, this court cited *Stratton v. Stratton*, 53 Wn. (2d) 558, 335 P. (2d) 39 (1959); *Johnson v. Johnson*, 53 Wn. (2d) 107, 330 P. (2d) 1075 (1958); *Siewert v. Livermore*, 52 Wn. (2d) 375, 325 P. (2d) 293 (1958); *Sweeny v. Sweeny*, 52 Wn. (2d) 337, 324 P. (2d) 1096 (1958); *Patterson v. Patterson*, 51 Wn. (2d) 162, 316 P. (2d) 902 (1957).

■ The issue with which the trial court was confronted in this case required a careful weighing of the various

factors involved in order to determine whether the best interests of Joan would be served by leaving her in the custody of her father or by uprooting her after six years and placing her in the custody of her mother.

The trial judge, with painstaking care, conscientiously considered all the material factors mentioned above and arrived at his decision that Joan should remain in her father's custody.

Even though this court might have reached a different conclusion if it had been charged initially with the responsibility of deciding this difficult question, nevertheless, we are quite convinced from our examination of the entire record that the trial court did not manifestly abuse its discretion in denying appellant's petition for a change of Joan's custody.

Consequently, the order entered by the trial court June 18, 1959, must be, and hereby is, affirmed.

While it is perhaps not necessary, we wish to make it clear that our decision is limited to the situation as it existed at the time of the entry of the trial court's order, and does not preclude either party from seeking further modification of the divorce decree as to the custody of Joan if it can be shown that conditions have materially changed since that time.

Neither party shall recover costs in this court.

MALLERY, HILL, WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.

FINLEY, C. J. (dissenting)—In *Patterson v. Patterson* (1957), 51 Wn. (2d) 162, 316 P. (2d) 902, the court reiterated and emphasized a policy of very strong reliance on trial court determinations in child custody matters. We said in *Applegate v. Applegate* (1959), 53 Wn. (2d) 635, 335 P. (2d) 595, that an award of child custody made by a trial court will be overturned only if there has been a manifest abuse of discretion. *Very strong reliance* is to be distinguished from *absolute adherence*, as evidenced by our reversal of the trial court in *Thompson v. Thompson* (1960), 56 Wn. (2d) 244, 352 P. (2d) 179.

The situation involved in the case now before us is, in my best judgment, another of those rare instances where it can be said convincingly that there has been a manifest abuse of judicial discretion because of a failure to recognize a change in conditions affecting the best interests and welfare of a minor child. It is pertinent to note that in the instant case custody originally was given to the mother, and that thereafter, *by agreement of the parties*, was transferred to the father when the mother became ill and was unable to support the child.

It seems to me that the trial court's so-called findings of fact, quoted in the majority opinion, are actually not findings of fact, but are more in the nature of value judgments or conclusions expressed to support continuation of an existing custody arrangement. On the other hand, the significant *facts*, as shown by the record and reflected in the majority opinion, are these:

First, the child is a minor, approximately eleven years of age at the present time.

Second, she is a female approaching puberty.

Third, the living quarters of the father, the custodial parent, are "small and cramped" (one bedroom, a living room with a daveno bed, and a "cubby-hole" kitchen).

Fourth, the father is employed only seasonally and has an average annual income of "around sixteen to eighteen hundred dollars," plus such unemployment compensation as he may be entitled to claim.

Fifth, he was unemployed at the time of trial, but expected to go to work on a four-to-midnight shift.

Sixth, the father can be with the child only on week ends, because, when employed, he works a four-to-midnight shift. At other times, the minor child, for the most part, has lived with a Mrs. Jones, or a Mrs. Schutte, or perhaps with some other adult female baby sitter.

Seventh, the record shows that the principal of the child's school testified that the school authorities recognized that the child craved the affection of a woman teacher more than was normal, and that an effort had been made in school to place the child with a teacher who was known to be ex-

ceptionally qualified in meeting this kind of need on the part of young pupils.

Now, in contrast, the mother's situation presently is as follows:

She has remarried; she is a college-trained woman, and works as a school teacher principal; she and her husband have a combined annual income of around ten thousand dollars; she has custody of a younger child (the sister of the child whose custody is in dispute), who is well cared for; and she is able to provide suitable accommodations for another child in her home.

On the basis of these facts, I think the present custody arrangements should be reversed for the following reasons:

(1) This child is approaching puberty, and thus is entering the period of her life when she will need a mother's love, attention, and guidance probably more than at any other time.

(2) Present custody arrangements do not provide consistent and substantial adult companionship and supervision. The child is shifted from the care and supervision of one adult female keeper to another, as the father—perhaps unfortunately but nevertheless undeniably—is unable to spend time with her because of his problem of night-time employment. Although he has legal custody; nevertheless, as a practical matter, personal custody of the child by the father actually is minimal.

(3) The cramped living quarters fail to provide the minimum amount of privacy commensurate with a healthful environment for this young female child.

(4) The mother would be able to provide more material comforts, greater intellectual stimulation, because of her past training and experience in handling children; and, of more significance, she would be available to provide consistent female companionship and counsel.

(5) The child is entitled to the companionship of her sister.

One may have sympathy for the father, and the record shows that under difficult circumstances he has devoted

considerable effort toward the care of his daughter. The limited and unstable financial situation in his home may be due to circumstances beyond his control. But these factors and considerations are insufficient justification for the court to impose on this impressionable child environmental conditions which are not conducive to adequate supervision and guidance and to her best welfare. We must bear in mind that the wishes of the parents are subsidiary in child custody matters. *Munroe v. Munroe* (1955), 47 Wn. (2d) 391, 287 P. (2d) 482; *Sweeny v. Sweeny* (1953), 43 Wn. (2d) 542, 262 P. (2d) 207.

On the basis of the facts and circumstances of this case, it is unrealistic to say that the best interests and welfare of the child would be promoted by allowing the father to retain custody. I am strongly convinced that the trial court's decision amounted to a manifest abuse of discretion. I would, without hesitation, reverse and order that custody of the minor child be granted to the mother. Alternatively, because of the pendency of this matter for two and one-half years, I would remand the case for a finding as to whether there has been a change in circumstances since the trial court findings of fact and conclusions of law were entered on June 18, 1959. The majority is reluctant to do either; therefore, I dissent.

It should be noted, as mentioned by the majority, that the disposition of this appeal does not preclude the appellant from bringing another petition to modify the divorce decree with respect to the custody of the child, if it can be shown that there has been a material change of conditions since the trial court findings two and one-half years ago. However, if any action is taken in this respect, it is certainly to be hoped that its processing in the courts can be expedited by all concerned.

HUNTER, J., concurs with FINLEY, C. J.