[No. 36259. Department Two. March 21, 1963.]

RAMONA V. CUMBIE, *Appellant,* v. CARROLL J. CUMBIE, *Respondent.*\*

*Miller, Jansen & Sackmann,* for appellant.

*Hennessey, Curran & Bentley,* by *Thomas F. Curran,* for respondent.

DONWORTH, J.—This is an appeal from an order changing the child custody provision of a divorce decree. In 1956, appellant (wife) and respondent (husband) (then residents of Adams County) were each granted a decree of divorce, each party having proved grounds therefor. Custody of their child, Carroll Forest Cumbie, then 18 months of age, was awarded to the mother. Shortly after the entry of the

\*Reported in 379 P. (2d) 918.

decree, the parties, by stipulation, procured a court order which modified the decree by permitting the father to have custody of the child for 6 weeks in the winter season and for 8 weeks each summer after the school term ended, and by permitting appellant to remove the child to Lewis County, Idaho. On July 7, 1961, respondent filed a petition for modification of the custody provision of the divorce decree to give him permanent custody of the child. At that time, respondent had remarried and was living in Spokane. Appellant was then unmarried and was living in Lewiston, Idaho.

In order to warrant the modification of the provisions of a decree of divorce regarding the custody of a child, the law is clear that there must be a material change in conditions concerning the welfare of the child and a showing that its welfare will be promoted thereby. *Munroe v. Munroe,* 49 Wn. (2d) 453, 302 P. (2d) 961 (1956); *Henson v. Henson,* 47 Wn. (2d) 866, 289 P. (2d) 1034 (1955).

The trial judge who heard the instant proceeding had also presided at the trial of the divorce case and, therefore, was quite familiar with the history and background of the parties, both of whom he had previously found to be fit and proper persons to have the custody of the child. This was reflected both in the trial court's oral decision and in the findings of fact. As stated in the oral decision herein, the child at the time of the divorce was only a little over a year old, and his custody, under almost any circumstances, would have been, and was, awarded to his natural mother. *Norman v. Norman,* 27 Wn. (2d) 25, 176 P. (2d) 349 (1947).

Finding of fact No. 2, to which no error is assigned, states:

"The Plaintiff's [appellant's] parents at the time of the original trial were willing to give the Plaintiff a home which would be suitable for the care of the minor child so that at the time of the original hearing in spite of conduct on the part of the Plaintiff, which was questionable, the care, custody and control of the child was awarded to Plaintiff."

This finding explains appellant's situation at the time of the divorce in 1956, when the year-old son's custody was awarded to her.

Since the divorce from respondent, appellant has been married three times and divorced twice, her first remarriage ending in an annulment and a subsequent remarriage to the same man. Her household, at the time of the trial in the instant proceeding, consisted of her two younger children (aged 4 and 3), the boy Carroll Forest Cumbie (aged 7), with whose custody this court is now concerned, an uncle of appellant, aged 58, and a girl aged 14. The 14-year-old girl (a relative by marriage) has a history of misconduct and of being unmanageable. The trial court found that the uncle "has a strong appetite for alcoholic beverages restrained only by his limited funds to procure liquor." (His only income is $97 a month received from social security payments.) Within this household there were admitted conflicts between the uncle and the girl; on one occasion a quarrel between the two culminated in the girl's telephoning the police.

Appellant, by her own admission, went drinking and dancing in nearby night clubs as often as two or three times a week. At such times the small children were left in the custody of the uncle and the 14-year-old girl. The court found that there were a number of bad influences in the home of appellant which adversely affected the welfare of Carroll Forest Cumbie.

Appellant, at the time of the trial, was unemployed. Her sole income consisted of $65 a month she had been receiving from respondent for the support of Carroll Forest Cumbie; $75 from another former husband for the support of his two minor children; $50 a month for board and room from the uncle; and $25 a month for support of the girl. The trial court found that it is impossible for the members of this household to live properly on that income, and that if more were contributed by respondent it would be taken over by the needs of the other members of the household.

As the trial court pointed out in his oral decision, his determination that the boy's custody should be changed from his mother to his father was not based on appellant's financial circumstances alone, but principally on the moral

atmosphere of her home as compared with conditions found in respondent's home.

Respondent remarried in 1958 and has developed a stable home life. His wife, Opal Cumbie, has a 13-year-old daughter by a former marriage who lives with them. The trial court found that Opal Cumbie is a woman of excellent character and is a good mother. Respondent has had steady employment, his home is in a good neighborhood in Spokane, and he possesses adequate financial resources to properly care for the boy. Both respondent and his wife are active participants in a local church. They have had the care of the child during visitation periods and are both willing to accept the responsibility of permanent custody.

■ We see no reason to discuss in detail the derogatory testimony produced by both parties in support of their respective contentions, since it would serve no useful purpose. Throughout the trial, there were numerous conflicts in the testimony of the witnesses. Appellant contends that this court should draw different inferences from the evidence from those reflected in the trial court's findings of fact. In effect, appellant would have us retry the case de novo from the record. The findings of fact (or portions thereof) which are assigned as error are supported by substantial evidence and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).

The only other assignment of error which need be considered is No. 12, which reads as follows:

"The trial court erred by failing to define the words 'suitable home' and 'suitable environment' used in its order of modification when restricting the visitation rights of plaintiff and thereby permitting the defendant to deprive plaintiff visitation upon defendant's interpretation of this language."

This assignment refers to the paragraph of the trial court's order modifying the divorce decree relating to appellant's visitation rights, which provides:

"It Is Further Ordered, Adjudged and Decreed that the Plaintiff is entitled to have the boy visit her in a suitable

home under her possession or control and in suitable environment during each alternate Christmas vacation period commencing with the Christmas vacation period of 1961 which visits shall commence on the Sunday occurring immediately after the commencement of Christmas vacation and end on the Sunday occurring immediately before the end of the Christmas vacation period observed by the school to which the boy is attending at the time."

Appellant's argument in support of this assignment is stated in her brief as follows:

"The words 'suitable home' and 'suitable environment,' are used in the order of modification when restricting the visitation rights of the plaintiff. This language permits the defendant to arbitrarily deny the plaintiff visitation privileges upon the defendant's personal definition of the words 'suitable home' and 'suitable environment.' "

We see no necessity for deciding this question at the present time. The trial court has continuing jurisdiction in this matter. If a controversy should arise in the future regarding appellant's exercise of her visitation rights, the trial court can dispose of it at that time.

Appellant cites only one case, *Thompson v. Thompson,* 56 Wn. (2d) 244, 352 P. (2d) 179 (1960). In that case, an order of the trial court modifying a divorce decree and awarding custody of a minor child to the father was reversed. There, as in the case at bar, both the father and the mother were determined by the court, in the original divorce decree, to be fit and proper persons to have custody of the child. However, the case is not in point, because the trial court decided at the time of the modification order that the homes of *both* the father and the mother were fit and proper homes in which to raise their child.

The trial court, in the instant proceeding, refused to find appellant unfit, saying that no acts of immorality had been proved. However, it is not necessary to prove a mother's moral unfitness to justify the court in awarding custody of the children to the father. *Storgaard v. Storgaard,* 26 Wn. (2d) 388, 174 P. (2d) 309 (1946).

In *Patterson v. Patterson,* 51 Wn. (2d) 162, 316 P. (2d)

902 (1957), we affirmed the decree of the trial court, which awarded the custody of three minor children to their father. We said:

"In *Chatwood v. Chatwood,* 44 Wn. (2d) 233, 239, 266 P. (2d) 782, we attempted to state rather emphatically that several significant guiding principles as to the disposition of child custody matters may be gleaned from our numerous decisions as follows:

" '1. Each case must be considered and determined separately, upon its own facts and the situation before the court;

" '2. The best interests and welfare of the children in custody matters are the paramount and controlling considerations. The interests of parents, including claims of the right to child custody, are subsidiary in relation to consideration of the welfare of their children;

" '3. Those factors usually inherent in the mother-child relationship must be considered in relation to the age and sex of the children. However, in this connection, socially desirable traits of character, emotional maturity, economic ability or stability of the mother, cannot be disregarded;

" '4. The findings of the trial courts will be accepted as verities on appeal, unless the record evidence clearly preponderates against such finding;

" '5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.' "

To summarize this case, the trial court, after consideration of the comparison of the environment of the two homes of the respective parents, determined that, in the best interests of the child, there should be a change in custody from the mother to the father until further order of the court, and so ordered.

Under the facts of this case as found by the trial court, and in light of the above considerations, we are not disposed to disturb the custody award made by the trial court. In child custody cases, the trial court, in furtherance of the best interests and welfare of the child, is vested with

a wide latitude of discretion and its custody disposition will not be disturbed in the absence of a manifest abuse of discretion. *Applegate v. Applegate*, 53 Wn. (2d) 635, 335 P. (2d) 595 (1959), and cases cited therein.

The trial court's order is hereby affirmed.

OTT, C. J., FINLEY, HUNTER, and HAMILTON, JJ., concur.