[No. 38289. Department One. November 18, 1965.]

ORREN D. PEUGH, *Respondent*, v. ROSE PEUGH, *Petitioner*.*

*Patrick M. Steele* and *Steele & McGoffin,* for petitioner.

*Brodie, Fristoe & Taylor,* for respondent.

LANGENBACH, J.†—This is a child custody case arising from a petition to modify the original decree of divorce changing the custody from mother to father; the petition was granted.

The parties were married in 1957. The wife (petitioner here) was a divorcee with a son, Richard, and a daughter, Sharon. After marriage, the parties lived in her trailer behind the B & E Tavern where petitioner worked. The tavern

*Reported in 408 P.2d 10.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

is owned by petitioner's sister and brother-in-law. On November 1, 1959, their son, David, was born.

The parties were divorced in March, 1962. The decree, finding petitioner a fit and proper person, gave custody of David to her with visitation rights in respondent.

Petitioner continued to live in her trailer and to work in the tavern; her hours were 5:30 to 11 a.m., and sometimes 2 hours in the afternoon. While she worked, her daughter or mother or sister baby-sat with David, who is now 5½ years old. David was inside the tavern on two occasions.

Meanwhile, Richard had married and joined the Navy. In 1963, his wife divorced him because he used narcotics and drank liquor. While he was in the Navy, he was in the brig for desertion. He was discharged in April, 1965, and is now residing with petitioner.

In May, 1964, petitioner purchased a modern home. Later, her mother moved in to help care for the family.

On March 31, 1965, respondent started this action. In the meantime, he had been securing his evidence. He hired a private investigator who wire tapped petitioner's telephone line. Three tapes were made, showing that (1) Richard, while he was absent without leave from the Navy, telephoned petitioner. She said she would not allow him to come home, would not assist him in any way to get a gun, but encouraged him to return to the Navy. (2) One Herres suggested some sexual activities with petitioner; some mention was made that petitioner's daughter was in the room and might hear the conversation. (3) Petitioner's mother and a Mr. Campbell discussed tranquilizers and pills which the mother had been taking.

A year ago petitioner's mother had an occasion to show her temper; she has at times drunk too much beer and she at one time used tranquilizers. She testified that she lost her mother and later her brother had burned to death; his death made her despondent, causing the use of tranquilizers and excessive amounts of beer. She has always drunk beer.

On one occasion, Sharon (16 years) drank some beer which was furnished by her brother, Richard. She, along

with other children, on two occasions broke into an old city hall and took some books. She also took home a stop sign which she found laying on the street.

Other evidence shows that Sharon has proven to be a good baby-sitter for David and for other children in the neighborhood; that petitioner's mother (who is well thought of by neighbors) has cared for neighboring children as well as for David; that petitioner's house has a spacious yard in which David can play; and that David plays with neighboring children.

Several witnesses, including next-door neighbors, testified that petitioner has kept a neat and orderly home; that there were no unusual activities occurring in the house; and that David appears to be happy and healthy.

Respondent, at the time of divorce, did not have a permanent home. His job required him to travel extensively. Now, he owns an old house which is being remodeled inside and out. Also, his mother (78 years) and his father (80 years) reside with him and are willing to care for David. Respondent does not know his neighbors well. They are elderly people. There are no small children in the vicinity of his home. Respondent has the same job, but is no longer required to be away for the night. He testified that David, while with petitioner, appeared sickly.

Following the entry of the decree of modification of custody, petitioner sought a writ of certiorari under the provisions of Rule on Appeal 57, RCW vol. 0.[1] It was granted and the record is before this court for final determination.

 The law is well settled in cases of this kind.

The petitioner had the burden of showing changes of conditions occurring after the entry of the original decree which resulted in the welfare of the child being best

---

[1] "(b) In addition to the writs that may be issued pursuant to (a) of this rule, an aggrieved party may petition the supreme court for review of any final determination made by a superior court in any action or proceeding in which one or more of the following are present:

"(1) *Custody.* Where the determination concerns the custody of a minor."

served by a modification of it. *McCray v. McCray,* 56 Wn. 2d 73, 74, 350 P.2d 1006, 1007 (1960).

We consider the rule which limits the evidence to changes in circumstances occurring after the divorce, and to proof of events and conditions following entry of the divorce, a good one, and evidence relating to events and conditions prior to the divorce should be excluded save in exceptional and extraordinary circumstances. . . . The main purpose of the rule limiting the evidence to conditions and events subsequent to the divorce decree is to avoid retrying the divorce case, to preserve finality in that which is res judicata. *Holten v. Holten,* 64 Wn. 2d 203, 206, 390 P.2d 982, 984 (1964).

In order to warrant the modification of the provisions of a decree of divorce, regarding the custody of a child, the law is clear that there must be a material change in conditions concerning the welfare of the child and a showing that the child's welfare will be promoted thereby. *Coldwater v. Coldwater,* 65 Wn.2d 941, 942, 400 P.2d 619, 620 (1965).

In child custody cases, the trial court, in furtherance of the best interests and welfare of the child, is vested with a wide latitude of discretion and its custody disposition will not be disturbed in the absence of a manifest abuse of discretion. *Cumbie v. Cumbie,* 61 Wn.2d 669, 674, 379 P.2d 918, 922 (1963).

The trial court, in finding that the general environment in which David has been living since the divorce has materially changed, relied upon all the facts including the difficulties of Richard and Sharon; the violent temper and drinking habit of petitioner's mother; the environment of the tavern; and the general attitude of petitioner and her mother as shown by the taped telephone conversations.

The question is whether the trial court abused its discretion in taking the young 5½-year-old boy from his mother, who has had his continuous care since birth, and placing him in the present home of his father.

Respondent argues that the conditions affecting the interest and welfare of David have changed in two respects: (1) respondent is now able to properly care for David; and (2) the general environment in which David has been living

since the divorce has so changed as to cause concern for the child's welfare.

It is true that respondent's conditions and circumstances have changed. He now has a permanent home which is being modernized. His parents reside with him and express an interest in caring for David. His job no longer requires him to be apart from his home for the night. But the material changes in circumstances are the ones which affect David. The respondent's home has a small yard, located in a neighborhood where there are no children with whom David can play. Petitioner, however, has a large modern home with a spacious yard, in a neighborhood where there are children with whom David has been playing. From this it appears that the interest of David is best served by being in the custody of petitioner, unless the general environment has so changed as to outweigh these advantages. It appears that it has not. In fact, the record indicates that petitioner has improved her circumstances.

The trial court relied on the general environment of the tavern. This was clearly erroneous. While petitioner lived in the trailer, David had been inside the tavern twice. But since petitioner has moved into her new home, David has not been near the tavern. Moreover, she has been employed there practically since her marriage to respondent without any complaint or objection on his part. Nothing has been said about her conduct while employed in the tavern.

The trial court relied on the three taped telephone communications to infer a detrimental change in the general environment and attitude of petitioner and her mother. No objection was made concerning the illegality of the wire tapping of the telephone. The question of the admissibility of such wire tapping procedure is not before the court and is not determined in this case. It suffices to say that the two pertaining to the errant son and grandmother have little probative value as far as the issue of custody is involved. Although petitioner's mother may have, at one time, used tranquilizers and drunk excessive amounts of beer, it does not appear that she is now doing so. In fact, when she did use them, she was despondent over the death

of her brother. She has always drunk beer. More important, she has never had trouble with David nor harmed him; she has cared for neighboring children; and she is well thought of by neighbors. As for her temper, she has only shown it once since the divorce, and then David was not present.

The trial court relied on the difficulties with Richard and Sharon. It is true that Richard had used narcotics and drunk excessive amounts of liquor, but there is no showing that, since the divorce, Richard ever came into contact with David in any manner. Even if Richard had been with David, this does not mean ipso facto that David would be harmed. The effect on David, if any, is merely one of speculation and conjecture, and by itself does not justify a change in custody. As for Richard's difficulties reflecting on petitioner as a mother, it suffices to say that we are only concerned with circumstances since divorce. Richard had his problems long before divorce.

The difficulties with Sharon are minor. She once drank some beer furnished by Richard. She once brought home a stop sign and, without permission, took some books from a city hall. But she has not continued in such endeavors. On the contrary, Sharon has proven to be a good baby-sitter not only for David, but also for other children. Sharon has always shown love for David.

If the taped conversation between petitioner and Herres be considered an inference of unfitness or an indiscretion, there is no testimony to show that any further action occurred. This was only a conversation on one occasion. It is hardly a basis to infer the general character of any person.

The next-door neighbors and friends testified on behalf of petitioner. The home atmosphere is normal and orderly. Petitioner has always taken good care of David, who appears happy and healthy.

This court holds that there is not a scintilla of credible evidence to sustain the findings of the trial court in changing custody.

The judgment is reversed and the case is hereby remanded to the trial court with instructions to vacate the

decree of modification and to reinstate the original decree as to the custody of the minor child. The petitioner, having prevailed, is entitled to her costs in the superior court and this court, together with reasonable attorney fees to be allowed in the trial court. It is so ordered.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.

December 20, 1965. Petition for rehearing denied.