[No. 39876.   En Banc.   April 17, 1969.]

ROGER ANDERSEN, *Respondent*, v. DEANNA ANDERSEN, *Appellant.**

*Flynn, Briggs & Damis,* by *Robert R. Briggs,* for appellant.

*Johnson & Dixon,* by *Brooks K. Johnson,* for respondent.

NEILL, J.—This appeal presents for review the trial court's solution to a child custody issue.

The parties were married in 1957 and three children were born to the union. There is a boy born September, 1958, a girl born September, 1959, and a boy born November, 1962. The parties were divorced in March, 1964, by a default decree entered in Thurston County upon complaint of Mr. Andersen. By terms of that decree, Mr. Andersen was required to pay all obligations of the community and to pay $75 a month for child support. Custody of the children was granted to Mrs. Andersen.

*Reported in 453 P.2d 856.

Each party remarried. Plaintiff (father) is still married, but the second marriage of defendant (mother) lasted only 6 months.

Mrs. Andersen is not trained for any particular kind of work and since the divorce has periodically received welfare assistance. Mr. Andersen is presently earning about $540 a month and his present wife is earning about $325 a month.

In 1967, Mrs. Andersen, then residing in Pierce County, petitioned for a modification of the divorce decree wherein she requested that child support payments be increased to $225 a month. Plaintiff (respondent) conceded that the $75 monthly child support originally decreed is inadequate, but cross petitioned for custody of the children.

At a hearing on the petitions, plaintiff alleged that a man was living at the defendant's (appellant's) home, which allegation is categorically denied by defendant. The trial court took the case under advisement and requested the county prosecutor to make an investigation and report. A second hearing was held after this report was filed. A decree was entered changing custody of the children to Mr. Andersen.

Mrs. Andersen appeals and assigns error to the entry of the order modifying the original divorce decree. She also assigns error to the following findings of fact, contending they are not supported by the evidence:

> [T]hat two of the neighbors believe that the Defendant and Herbert Cole have been living together in the house at that address; and that such a belief is justified by outward appearances, and it is the belief of the Court.

Finding of Fact No. 5.

> That because of her conduct with Herbert Cole the Defendant is not presently fit to have the custody of the minor children of the parties; and that the Plaintiff is a fit and proper person to have such custody.

Finding of Fact No. 6.

In a proceeding of this type, the children's welfare is the primary consideration. *Sweeny v. Sweeny*, 43 Wn.2d 542, 262 P.2d 207 (1953); *Joslin v. Joslin*, 45 Wn.2d

357, 274 P.2d 847 (1954). Defendant points out that the trial court made no specific finding that the transfer of custody would be in the children's best interests, but contends that it acted merely to punish her for her alleged misconduct contrary to the holding in *Norman v. Norman,* 27 Wn.2d 25, 27, 176 P.2d 349 (1947):

As the [trial] court so aptly stated in its memorandum opinion:

"This question of disposition of custody of the child is not to be approved from the point of view of the supposed rights of the father and mother or with any ideas of punishing or rewarding one or the other on account of conduct, but rather from the point of view of the welfare of the child. . . ."

She contends that the evidence not only preponderates against findings of fact Nos. 5 and 6, *supra,* but shows that defendant is a fit and proper person to have custody of the children, whereas plaintiff and his wife are not.

In *Chatwood v. Chatwood,* 44 Wn.2d 233, 239, 266 P.2d 782 (1954), we stated that the following guiding principles and considerations could be gleaned from our previous child-custody decisions:

1. Each case must be considered and determined separately, upon its own facts and the situation before the court;

2. The best interests and welfare of the children in custody matters are the paramount and controlling considerations. The interests of parents, including claims of the right to child custody, are subsidiary in relation to consideration of the welfare of their children;

3. Those factors usually inherent in the mother-child relationship must be considered in relation to the age and sex of the children. However, in this connection, socially desirable traits of character, emotional maturity, economic ability or stability of the mother, cannot be disregarded;

4. The findings of the trial courts will be accepted as verities on appeal, unless the record evidence clearly preponderates against such findings;

5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors

to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.

A number of witnesses testified as to the fitness and lack of fitness of each parent to have custody of the children. After considering this conflicting testimony, in light of what it considered to be the children's best interests,[1] the trial court found that defendant was unfit to have custody of the children and that plaintiff was fit. It is apparent from a reading of the court's oral opinion that he did not rely solely upon the conduct of defendant with Mr. Cole in reaching his conclusion as to her fitness to retain the children, but considered other facts as well. A review of the record shows that there is substantial evidence to support this finding and we will not overturn it. As we said in *Cumbie v. Cumbie,* 61 Wn.2d 669, 672, 379 P.2d 918 (1963):

> We see no reason to discuss in detail the derogatory testimony produced by both parties in support of their respective contentions, since it would serve no useful purpose. Throughout the trial, there were numerous conflicts in the testimony of the witnesses. Appellant contends that this court should draw different inferences from the evidence from those reflected in the trial court's findings of fact. In effect, appellant would have us retry the case de novo from the record. The findings of fact (or portions thereof) which are assigned as error are supported by substantial evidence and will not be disturbed. [Citation omitted.]
>
> . . .
>
> In child custody cases, the trial court, in furtherance of the best interests and welfare of the child, is vested with a wide latitude of discretion and its custody disposition

[1]Although there is no specific finding or conclusion spelling this out, we can determine from the trial court's oral opinion contained in the statement of facts that he did directly take this into consideration in his ruling. Further appellant has not sought a vacation of the order. CR 52(b) and 52(d); *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *Bjorneby v. Bjorneby,* 56 Wn.2d 561, 354 P.2d 384 (1960); *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965). *Also see, In re Todd v. Superior Court,* 68 Wn.2d 587, 414 P.2d 605 (1966).

will not be disturbed in the absence of a manifest abuse of discretion. *Applegate v. Applegate*, 53 Wn. (2d) 635, 335 P. (2d) 595 (1959), and cases cited therein.

Our statement in *Thoren v. Thoren*, 73 Wn.2d 671, 672, 440 P.2d 182 (1968), is apropos here:

We approach appellant's contentions in this divorce action with an eye upon the tenet that this court will not substitute its judgment for that of the trial court in questions of child custody and property division unless we are persuaded that the trial court has manifestly abused the broad discretion vested in it. And, this tenet prevails whether we tend to incidentally agree or disagree with the trial court's determinations. *Clark v. Clark*, 72 Wn.2d 487, 433 P.2d 687 (1967), and cases cited therein.

Judgment affirmed.

HUNTER, C. J., WEAVER, HAMILTON, and McGOVERN, JJ., and ARMSTRONG, J. Pro Tem., concur.

FINLEY, J. (dissenting)—The problem posed by this case may be easily illustrated by setting out the findings of fact of the trial court relating to the condition of the children's home life at the date of entry of the change of custody.

## V.

That since moving to Pierce County the [appellant] has lived in a house . . . originally leased in the name of Herbert Cole and wife, later changed to Herbert Cole and Deanna Chamberlain; that Herbert Cole has given that address as his address at his place of employment and for driver's license purposes; that he has spent much time at that address since January of 1966; that two of the neighbors believe that the [appellant] and Herbert Cole have been living together in the house at that address; and that such a belief is justified by outward appearances, and it is the belief of the Court.

## VI.

That because of her conduct with Herbert Cole the [appellant] is not presently fit to have the custody of the minor children of the parties; and that the [respondent] is a fit and proper person to have such custody.

A careful examination of the record indicates that insofar as facts were placed in evidence concerning the condition of the children and their behavior, an overwhelming preponderance of the testimony indicates that (in the opinion of the neighbors and the school authorities) the children were well-behaved, successful in school, and the objects of careful and loving maternal attention and were well cared for within the limits of the appellant's ability in the light of admittedly inadequate and sporadic support payments received from the respondent.

The even less than a scintilla of evidence offered against appellant is such that the majority opinion is reduced to reliance upon the trial court's discretion. The oral opinion of the trial court occupies five pages of transcript. It commences with a rather dubious presumption that because the appellant did not contest the original divorce decree she had no defense as to grounds or fault. It states:

> The one thing that is not in issue is the quality of the physical care that the children are getting. The thing that is in issue is the overall judgment and perhaps conduct, but certainly the overall judgment of [appellant].

Two and one-half pages of the opinion are then devoted to the ostensible "sixty four dollar question": "Was Herb Cole living there, at least a substantial part of the time?"

It appears from the only indicia before this court, the findings and the oral opinion, that the sole determinative factor in the transfer of custody was the supposed illicit relationship between appellant and Mr. Cole. There is no finding as to neglect or physical mistreatment of the children, and little, if any, evidence to support such a finding. There is no evidence in the record to support a finding that appellant's relationship with Mr. Cole was damaging to the children. On the contrary, the school authorities and neighbors testified that the children were happy and normal. The trial court engages in some surmise and conjecture, but there is no expert testimony attempting to establish the instability or stability of the mother. Apart from an examination in chambers of the eldest child, which was prin-

cipally directed to the *existence* of the relationship with Cole, no effort seems to have been made to establish the subjective effect of the relationship with Cole on the children.

The trial court is allowed a broad discretion in custody matters, and a reversal of its decision requires a showing of manifest abuse of that discretion. *Applegate v. Applegate,* 53 Wn.2d 635, 335 P.2d 595 (1959). We are not disposed to retry custody determinations in this court. But reliance upon an erroneous theory of law is reversible error.

This court has held that a continued adulterous relationship is not, per se, enough to disqualify a parent from receiving custody of children. *Westlake v. Westlake,* 52 Wn.2d 77, 323 P.2d 8 (1958); *Norman v. Norman,* 27 Wn.2d 25, 176 P.2d 349 (1947). The conduct, established by the scantiest of evidence, in this case falls far short of adultery.

It may be that the mother's conduct in this case could be contrary to the welfare of her children. However, it appears to me that is a factual question which would be better explicitly determined than presumed from a somewhat dubious judicial assumption as to adverse effects upon the children attributed to the romancing of appellant-divorcee by Mr. Cole.

It is most difficult for me to avoid an impression that the decree was entered upon the erroneous theory that a finding of the illicit relationship would, per se, support the transfer of custody. There are no other findings to support the decree. Normally it should and would be reversed.

However, 18 months have passed since the transfer of custody. In that time, circumstances may well have changed. Disturbance of established familial relationships should be minimized, and should never occur because of the fortuities of legal proceedings. Children should not be uprooted because this court is unaware of intervening events, or because it requires on review a fuller exposition of what a trial judge felt better left unsaid.

These factors combine to convince me that the proper remedy in this case, considering foremost, as we should,

the welfare of the children as well as the subsidiary interests of both parents and undoubted interests of the state as parens patriae, is a remand for a full hearing in the light of this opinion and the existing circumstances at the time of hearing. *Cf. Kehus v. Euteneier*, 59 Wn.2d 188, 367 P.2d 27 (1961) (dissent).

This is in no sense an easy case for any judge or for any court. One cannot escape a feeling that counsel, as officers of the court, owed to it more than they have seen fit to tender. Such a feeling may well explain the trial judge's request to the prosecuting attorney for an investigation of the children's living circumstances. It would be hoped that upon a new hearing some attempt could be made to delineate for the court through expert testimony or otherwise the realistic potential of both homes in relation to the best interests and welfare of the children.

For the reasons given above, I would reverse and remand for a new hearing.

HALE, J., concurs with FINLEY, J.

HILL, J. (concurring specially in the dissent)—Without concurring in all of the statements made by Justice Finley in his dissent, I do concur in the disposition of the matter suggested therein.

While I question whether the change in custody from that of the mother to that of the father should have been made, it has now been a fait accompli for 18 months, and more harm than good might result by again changing custody.

The new hearing should not be concerned with the charges and countercharges between the parties, but should be an attempt, as Justice Finley puts it, to appraise "the realistic potential of both homes in relation to the best interests and welfare of the children."